LAW OFFICES OF VINCENT E. BAUER
112 MADISON AVENUE, 5TH FLOOR
NEW YORK, NEW YORK 10016
Tel: 212-575-1517
Fax: 212-689-2726

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------X
KEVIN COGAN and ELIZABETH COGAN,

                       Plaintiffs,               16 CV 2109 (SJF)(SIL)

        -against-                             **ANSWER AND**
                                                              **COUNTERCLAIM**

WALTER KISSINGER, WILLIAM KISSINGER,
THOMAS KISSINGER, DANA KISSINGER, JOHN
KISSINGFORD F/K/A JOHN KISSINGER and THE
ESTATE OF EUGENIA KISSINGER,

                       Defendants.
------------------------------------------------------------------------X

       Defendant Walter Kissinger ("Defendant" or "Mr. Kissinger"), through his attorneys, Morgan, Lewis & Bockius LLP and The Law Offices of Vincent E. Bauer, answers the Complaint filed in this action as follows:

1. Denies the allegations contained in paragraph 1, except admits that Plaintiffs performed some limited services for Defendant, and resided rent and expense free in a cottage located on the same parcel of land as Defendant's home.

2. States that paragraph 2 contains conclusions of law to which no response is required. To the extent a response is required, the allegations are denied.

3. Denies knowledge or information sufficient to admit or deny the allegations contained in paragraph 3.

4. Denies knowledge or information sufficient to admit or deny the allegations contained in paragraph 4.

5. Admits the allegations contained in paragraph 5.

6. Denies the allegations contained in paragraph 6.

7. Admits the allegations contained in paragraph 7.

8. Admits the allegations contained in paragraph 8.

9. Admits the allegations contained in paragraph 9.

10. Denies the allegations contained in paragraph 10.

11. States that paragraph 11 contains conclusions of law to which no response is required.

12. States that paragraph 12 contains conclusions of law to which no response is required.

13. States that paragraph 13 contains conclusions of law to which no response is required.

14. Denies the allegations contained in paragraph 14 as stated.

15. Denies the allegations contained in paragraph 15.

16. Denies knowledge or information sufficient to admit or deny the allegations contained in paragraph 16, except admits that, in or around 2007, Defendant and Eugenie Kissinger sought a groundskeeper for the Kissinger Residence.

17. Denies knowledge or information sufficient to admit or deny the allegations contained in paragraph 17, except admits that Plaintiffs applied for employment with Defendant and his late wife Eugenie Kissinger.

18. Denies the allegations contained in paragraph 18.

19. Denies the allegations contained in paragraph 19, except admits that the job entailed limited grounds-keeping tasks, limited cleaning of the Kissinger Residence, driving Defendant and his wife to and from the airport on rare occasion, and feeding Mr. and Mrs. Kissinger's dog.

20. Admits that Plaintiffs' employment began in or around November 2007.

21. Denies the allegations contained in paragraph 21.

22. Denies the allegations contained in paragraph 22.

23. Denies the allegations contained in paragraph 23, except admits that Plaintiffs, who had exclusive occupancy of the cottage while employed by Defendant, neglected to clean or repair the cottage, or even to report to Defendant and his wife any problems or needed repairs to the cottage, resulting in a significant deterioration of the condition of the cottage which could have been avoided with even the most basic communication and diligence from and by Plaintiffs.

24. Denies the allegation contained in paragraph 24, except admits that the Kissinger Residence was on an approximately one-acre plot, on which was a main house and the referenced cottage.

25. Denies the allegations contained in paragraph 25, except admits that the Kissinger Residence had garden areas, with established trees, plants and shrubs that required minimal maintenance.

26. Denies the allegations contained in paragraph 26.

27. Admits the allegations contained in paragraph 27.

28. Denies the allegations contained in paragraph 28.

29. Denies the allegations contained in paragraph 29, except admits that Plaintiff Kevin Cogan performed minimal landscaping, gardening, and shoveling chores.

30. Denies the allegations contained in paragraph 30, and specifically denies that Plaintiff Elizabeth Cogan was required to be on call.

31. Denies the allegations contained in paragraph 31, and specifically denies that Plaintiff Kevin Cogan was required to be on call.

32. Denies the allegations contained in paragraph 32, except admits that Plaintiff Elizabeth Cogan was supposed to clean the Kissinger Residence at most once per week when Mr. and Mrs.

Kissinger were in residence and at most once per month when they were not in residence, which was more than one-half of the year, and further admits that, during a very limited period of time, Plaintiff Elizabeth Cogan prepared meals for Defendant and/or Eugenie Kissinger.

33. Denies the allegations contained in paragraph 33, except admits that Plaintiff Elizabeth Cogan did not perform tasks related to the exterior of the Kissinger home or the grounds.

34. Denies the allegations contained in paragraph 34.

35. Denies the allegations contained in paragraph 35.

36. Denies the allegations contained in paragraph 36.

37. Admits the allegations contained in paragraph 37, and further states that Plaintiff Elizabeth Cogan was compensated for all care-giver services provided by her.

38. Denies the allegations contained in paragraph 38, except admits that Plaintiff Elizabeth Cogan, for a brief period of time, performed services for the ailing Mrs. Kissinger, for which services she was compensated.

39. Denies the allegations contained in paragraph 39, and states that Plaintiff Elizabeth Cogan was compensated at the rate of $15 per hour for her services in connection with the care of Mrs. Kissinger.

40. Denies the allegations contained in paragraph 40.

41. Denies the allegations contained in paragraph 41, except admits that, following the death of Mrs. Kissinger, for a very brief period of time, Plaintiff Elizabeth Cogan provided personal services to Defendant, for which services she was paid at the rate of $15 per hour.

42. Denies the allegations contained in paragraph 42.

43. Denies the allegations contained in paragraph 43.

44. States that paragraph 44 contains legal conclusions to which no response is required. To the extent a response is required, denies the allegations.

45. Denies the allegations contained in paragraph 45.

46. Denies the allegations contained in paragraph 46.

47. Denies the allegations contained in paragraph 47.

48. States that paragraph 48 contains legal conclusions to which no response is required. To the extent a response is required, denies the allegations.

49. Denies the allegations contained in paragraph 49.

50. Denies the allegations contained in paragraph 50.

51. Denies the allegations contained in paragraph 51.

52. Denies the allegations contained in paragraph 52.

53. Denies the allegations contained in paragraph 53.

54. States that paragraph 54 contains legal conclusions to which no response is required. To the extent a response is required, denies the allegations.

55. Denies the allegations contained in paragraph 55.

56. Denies the allegations contained in paragraph 56, except admits that Plaintiffs, who had exclusive occupancy of the cottage while employed by Defendant, neglected to clean or repair the cottage, or even to report to Defendant and his wife any problems or needed repairs to the cottage, resulting in a significant deterioration of the condition of the cottage, which could have been avoided with even the most basic communication and diligence from and by Plaintiffs.

57. Repeats his responses to the allegations contained in paragraphs 1-56.

58. States that paragraph 58 contains legal conclusions to which no response is required. To the extent a response is required, denies the allegations.

59. States that paragraph 59 contains legal conclusions to which no response is required. To the extent a response is required, denies the allegations.

60. States that paragraph 60 contains legal conclusions to which no response is required. To the extent a response is required, denies the allegations.

61. Denies the allegations contained in paragraph 61.

62. Denies the allegations contained in paragraph 62.

63. Denies the allegations contained in paragraph 63.

64. Denies the allegations contained in paragraph 64.

65. Denies the allegations contained in paragraph 65.

66. Denies the allegations contained in paragraph 66.

67. Denies the allegations contained in paragraph 67.

68. Repeats his responses to the allegations contained in paragraphs 1 through 67.

69. States that paragraph 69 contains legal conclusions to which no response is required. To the extent a response is required, denies the allegations.

70. States that paragraph 70 contains legal conclusions to which no response is required. To the extent a response is required, denies the allegations.

71. Denies the allegations contained in paragraph 71.

72. Denies the allegations contained in paragraph 72.

73. Denies the allegations contained in paragraph 73.

74. Denies the allegations contained in paragraph 74.

75. Denies the allegations contained in paragraph 75.

76. Denies the allegations contained in paragraph 76.

77. Denies the allegations contained in paragraph 77.

78. Repeats his responses to the allegations contained in paragraphs 1 through 77.

79. States that paragraph 79 contains legal conclusions to which no response is required.  To the extent a response is required, denies the allegations.

80. States that paragraph 80 contains legal conclusions to which no response is required.  To the extent a response is required, denies the allegations.

81. Denies the allegations contained in paragraph 81.

82. Denies the allegations contained in paragraph 82.

83. Denies the allegations contained in paragraph 83.

84. Denies the allegations contained in paragraph 84.

85. Denies the allegations contained in paragraph 85.

86. Denies the allegations contained in paragraph 86.

87. Repeats his responses to the allegations contained in paragraphs 1 through 86.

88. States that paragraph 88 contains legal conclusions to which no response is required.  To the extent a response is required, denies the allegations.

89. States that paragraph 89 contains legal conclusions to which no response is required.  To the extent a response is required, denies the allegations.

90. States that paragraph 90 contains legal conclusions to which no response is required.  To the extent a response is required, denies the allegations.

## **GENERAL DENIAL**

Defendant Walter Kissinger denies each and every allegation in the Complaint not specifically admitted herein.

## FIRST AFFIRMATIVE DEFENSE

Plaintiffs have failed to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred in whole or in part by any and all applicable statutes of limitations, including, but not limited to, 29 U.S.C. section 255(a).

## THIRD AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred in whole or in part by the doctrine of accord and satisfaction, and payment.

## FOURTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred in whole or in part because such claims have been waived, discharged, and or released.

## FIFTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred in whole or in part by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred in whole or in part by the doctrine of unclean hands.

## SEVENTH AFFIRMATIVE DEFENSE

The claims of Plaintiffs are barred in whole or in part by the doctrine of estoppel.

## TENTH AFFIRMATIVE DEFENSE

If any damages have been sustained by Plaintiffs, although such is specifically denied, Defendant is entitled under the equitable doctrine of setoff and recoupment to a credit for all amounts paid or otherwise provided to Plaintiffs, including for all tips, bonuses, loans and any other payments and other financial and other benefits they received.

## ELEVENTH AFFIRMATIVE DEFENSE

Defendant is not an appropriate defendant because he did not engage in interstate commerce.

## TWELFTH AFFIRMATIVE DEFENSE

If Defendant is found to have failed to pay Plaintiffs any amount due, which allegation Defendant denies, Defendant acted at all times on the basis of a good faith and reasonable belief that Defendant's conduct was not unlawful within the meaning of any federal wage and hour law.

## THIRTEENTH AFFIRMATIVE DEFENSE

Defendant contends that neither Plaintiff is entitled to liquidated damages because any alleged act or omission by Defendant was in good faith, and Defendant had reason to believe that his conduct did not violate any wage and hour laws.

## FOURTEENTH AFFIRMATIVE DEFENSE

If any damages have been sustained by Plaintiffs, although such is specifically denied, Defendant is entitled under the equitable doctrine of setoff and recoupment to the applicable lodging credit for the value of the accommodations and other financial and other benefits provided to Plaintiffs.

Defendant reserves the right to assert such additional defenses that may appear and prove applicable during the course of this litigation.

## FIRST COUNTERCLAIM
### (RESTITUTION OF MONIES AND OTHER BENEFITS CONFERRED PURSUANT TO FAITHLESS SERVANT DOCTRINE)

1. Defendant Walter Kissinger is a 92 year-old former prominent business executive.

2. Mr. Kissinger is also a veteran of World War II, having attained the rank of Captain and having been honorably discharged. He was, for many years, actively involved in charitable and civic matters, having served on the boards of multiple local organizations, including Hofstra University and Stony Brook University. He was the founder and Chairman of the Board of the Long Island Research Institute, a collaboration of Brookhaven National Labs, Stony Brook University and Cold Spring Harbor Laboratory.

3. Mr. Kissinger has an impeccable reputation, both personally and professionally.

4. In contrast, upon information and belief, Plaintiff Kevin Cogan has a default judgment against him which reflects highly unscrupulous behavior by him. In that regard, upon information and belief, on March 29, 2016, one month to the day prior to filing this action, a default judgment was entered in the Supreme Court of the State of New York, Nassau County, against Kevin Cogan in connection with an action for fraud which was brought by homeowners who were defrauded into paying Mr. Cogan and others money based upon false promises to obtain for the homeowners better terms on their mortgages. The judgment is for a total of $146,396, and includes sums for both compensatory and punitive damages for the fraud committed by Kevin Cogan and others.

5. Walter and Eugenie Kissinger lived at 1 Lower Drive, Huntington Bay NY, between 1964 and 2014. Between 1964 and 1988 they raised their four children there. For most of that time, the Kissingers had relationships with couples who acted as caretakers of sorts, and who lived rent-free and expense free on the Kissinger property, in the cottage. In all, five couples in turn acted as caretakers.

6. Plaintiffs began their role as caretakers in November 2007. At that time, they moved, along with their 2 children (Plaintiffs subsequently had a third child while living there), into the

cottage. Upon information and belief, prior to taking occupancy of the cottage, Plaintiffs had lived in 15 counties in 6 states during the previous 18 years. When Plaintiffs moved in, the cottage was in good condition.

7. The Kissinger children had all long since moved from the Huntington Bay home before Plaintiffs began to reside there. At the time, Mr. Kissinger was 83 years old. His wife, Eugenie Kissinger, was 75 years old.

8. Plaintiffs had very limited work responsibilities. Plaintiff Elizabeth Cogan was expected to clean the Kissinger home, at most once per week, and, when Mr. and Mrs. Kissinger were travelling (which was for more than half the year), only once per month.

9. Plaintiff Kevin Cogan was expected to perform light landscaping services, including mowing the lawn, trimming bushes, and mulching. In the winter, Mr. Cogan was expected to shovel snow from walks and the driveway, although this was mostly necessary for Plaintiffs to gain access to the cottage in which they lived, as Mr. and Mrs. Kissinger spent the winters in Southern California. Plaintiffs also ran occasional errands for Mr. and Mrs. Kissinger, and transported them to and from the airport on occasion. Of course, Plaintiffs were also expected to take care of the cottage in which they lived.

10. In all, Elizabeth Cogan spent approximately 4 hours per week working on behalf of the Kissingers, and Kevin Cogan approximately 2-3 hours.

11. In exchange for these services, Plaintiffs were provided with the use and occupancy of the above-referenced cottage, free of rent or utilities. Upon information and belief, the rental value of the cottage at the time Plaintiffs moved in was at least $3,000 per month. The value of the utilities was several hundred dollars each month.

12. To the extent that additional services were required and provided by Plaintiffs, separate consideration was offered.  In that regard, Elizabeth Cogan was paid $15 per hour during a period of time when Mrs. Kissinger was quite ill, and Elizabeth Cogan provided certain care for her.

13. During the entirety of the time that Plaintiffs lived on the Kissingers' property, Mr. and Mrs. Kissinger travelled extensively.  Typically, they spent three months in the summer in Colorado, and a similar amount of time in California in the winter.  They also travelled extensively during the fall and spring.  As a result, for more than half the year, neither Mr. and Mrs. Kissinger nor anyone else were  at the house in Huntington.

14. When Mr. and Mrs. Kissinger were away, which was more than half the time, there was no need to clean their house as frequently, and Plaintiff Elizabeth Cogan's work responsibilities took her substantially less time than when the Kissingers were in Huntington.

15. During the entire time they lived on the Kissinger property, the Cogans rarely allowed the Kissingers or others in the cottage.  In fact, when the Kissinger property was marketed for sale in 2011, the Cogans refused to allow realtors and prospective buyers to see the inside of the cottage, thus inhibiting the sale process.  As it turned out, the Cogans were concealing the fact that they were allowing the condition of the cottage to deteriorate, in violation of their contractual and fiduciary duties to Mr. and Mrs. Kissinger.

16. In that regard, in 2015, in connection with a continued attempt to sell the property, the realtor was permitted to enter the cottage.  It was discovered that the cottage, which was in very good condition when the Cogans moved in, had been badly neglected since then by the Cogans. Toilet seats were missing, knobs and light fixtures were broken, and squirrels lived in the cottage attic.  Plaintiffs, who were aware of these issues, neither addressed them nor made the Kissingers

aware of them.  Plaintiffs' willful neglect in this regard resulted in a significant diminution in the sale price of the Kissinger Residence, and also delayed the sale of the property.

17.  Plaintiffs also neglected their duties as related to the Kissinger's home and grounds.  In that regard, when Plaintiffs first came to live on the Kissinger property in 2007, the Kissinger home and grounds were neat and well-attended.

18.  By 2011, when the Kissingers first attempted to sell their home, a family friend was enlisted to prepare the home for sale.  That friend observed the Kissinger home and grounds in a state of disrepair.  The house appeared as though it had not been cleaned properly in years.  Cobwebs, grease on kitchen walls, dusty drapes and carpets.  Amazingly, when confronted about the condition of the Kissinger home, Elizabeth Cogan said that she was not paid to clean, and that cleaning was _not_ her job.

19.  Prior to the first attempt to sell the home had to be  updated extensively, and cleaned by a cleaning service.  By late 2011, the house was again in excellent condition.  Thereafter, however, the Cogans again took advantage of Mr. and Mrs. Kissinger's advancing ages, and continued to accept the benefits provided to them while willfully refusing to perform agreed-upon duties.

20.  After December 2013, the Kissingers no longer resided in Huntington.  Mrs. Kissinger passed away early in 2014.  In total, Mr. Kissinger was at the Huntington home for no more than a few weeks total after December 2013.  Thus, there was extremely little work to be done after that point by Plaintiffs.

21.   Seemingly, however, the Cogans failed or refused to perform even the minimal amount of services necessary to maintain the condition of the Kissinger home.  In that regard, in 2015, in connection with a second attempt to sell the Kissinger home, the family friend noticed that the home was again in poor condition, seemingly not having been cleaned well since 2011.  The

condition of the grounds had also deteriorated, as the result of Plaintiffs' willful neglect of their duties.

22. Again, a cleaning service and maintenance people were brought in, to do the work that Plaintiffs were supposed to have done. Additionally, in connection with the process of showing the house for sale, Plaintiffs were instructed to keep the Kissinger house clean.

23. Not only did Plaintiffs make little effort to do so, they actively attempted to frustrate the sale process. In that regard, it is believed that Plaintiffs were sleeping at the time in the Kissinger home, and would not make the beds after doing so. Also, one of the Plaintiffs would defecate in the toilet in the Kissinger home on a daily basis, and refuse to flush the toilet. Of course, these childish actions necessitated additional work for the realtor and others, and further frustrated the process of selling the house.

24. Plaintiffs allege in their civil action complaint that they were not paid for their work, except for a limited period of time. In fact, in addition to the very significant benefit of living in a nice home in Huntington Bay, NY, Plaintiffs did receive additional compensation. For example, Plaintiffs were paid a Christmas bonus each year, and also were provided with gift cards.

25. Additionally, in connection with the sale of the Kissinger home in 2015, Plaintiffs were given $10,000 to enable them to move into a new home. In that regard, Mr. Cogan threatened to hold up the sale of the home, claiming he and his wife would not move from the cottage unless they were given $10,000. The Kissingers complied with that demand, only to be sued thereafter.

26. This lawsuit is also frivolous in nature. As an example, the Cogans have sued each of the four Kissinger children, claiming that they were employed by each of those children. In fact, as the Cogans well know, none of the Kissinger children were involved in the professional

relationship between the Kissingers and the Cogans, and none of those children lived in the Kissinger home during the period relevant to the lawsuit.

27.  Plaintiffs' willful misconduct, in terms of their refusal to perform the work they had agreed to perform while continuing to accept the benefits of their jobs, the damage to the property and resulting diminution in its value caused by their neglect, as well as actively attempting to frustrate the process of selling the Kissinger residence, should result in their forfeiture of the compensation paid to them (both monetary and in connection with the benefits associated with living in the rent and utilities-free housing provided to them) during the period of their employment.

## SECOND COUNTERCLAIM

### (BREACH OF IMPLIED CONTRACT)

28.   Defendant-Counterclaimant Walter Kissinger repeats and realleges the allegations contained in paragraphs 1 through 27.

29.  Mr. Kissinger and Plaintiffs had an oral contract with respect to the limited services they were to provide and which included an implied covenant that they would act in good faith as related to those services.

30.  Plaintiffs' failures to perform their work responsibilities and to communicate to Mr. Kissinger the condition of the cottage, as well as their affirmative efforts to impede the sale of the Kissinger residence, constitute breaches of the contract and its implied covenant.

31.  As the result of the above-referenced breaches, Mr. Kissinger was damaged in amount to be determined at trial.  Those damages stem from the need to engage the services of cleaning and maintenance personnel to remedy the harm which resulted from Plaintiff's actions and inactions.

WHEREFORE, Defendant Walter Kissinger demands judgment dismissing the Complaint in its entirety, and awarding him damages in an amount to be determined at trial on his counterclaim, along with such other relief as the court deems just and proper.

Dated:  New York, NY
June 10, 2016

_____s/_____

Vincent E. Bauer (VB-0794)
Law Offices of Vincent E. Bauer
112 Madison Avenue, 5th Floor
New York, New York 10016

Morgan, Lewis & Bockius LLP

By: _____s/_____

Christopher A. Parlo (CP-4310)
101 Park Avenue
New York, NY 10017